WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Leopoldo N. Leon,

              Plaintiff,

v.

Carolyn W. Colvin,

              Defendant.

No. CV-14-00093-PHX-DGC

**ORDER**

      Plaintiff Leopoldo Leon seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision is vacated and remanded.

**I.    Background.**

      Plaintiff was born on October 12, 1960. He has a sixth grade education and has previously worked as a landscaping foreman and laborer. Plaintiff filed applications for disability insurance benefits in October of 2009. These applications were denied on February 5, 2010. On September 27, 2010, Plaintiff applied again for a period of disability and disability insurance benefits, alleging disability beginning August 30, 2008. On June 11, 2012, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On July 27, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to

be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013, and that he has not engaged in substantial gainful activity since February 6, 2010, the date after the previous determination. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the bilateral knees; degenerative disc disease of the lumbar spine; diabetes with nephropathy; and hypertension. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps or stairs, never ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel and crouch, but can never crawl. He must avoid concentrated exposure to vibrations and hazards, such as moving machinery and unprotected heights.

A.R. 20. The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.   Analysis.**

Plaintiff argues that the ALJ's decision is defective for four reasons: (1) the ALJ erred in refusing to reopen his previous applications, (2) the ALJ improperly refused to subpoena an examining doctor, (3) the ALJ improperly evaluated third-party testimony, and (4) the ALJ improperly evaluated Plaintiff's credibility and discounted his subjective

testimony. The Court will address each argument below.

### A. The ALJ Did Not Err in Refusing to Reopen Previous Applications.

Plaintiff filed two applications for disability insurance benefits in October of 2009. These applications were denied on February 5, 2010. In her decision in this case, the ALJ found that the "applications are final and binding and are not reopened herein. Therefore, the present decision addresses only the period beginning on February 6, 2010, the day after the previous applications were denied, and continuing through the present." A.R. 14. Plaintiff argues that the ALJ erred in refusing to reopen the previous applications and failing to consider a period of disability back to August of 2008. Doc. 13 at 12-13.

A disability determination may be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason." 20 C.F.R. § 404.988(a). The Ninth Circuit has held that the "decision to reopen a claim is purely discretionary. . . . [A] refusal by the Secretary to reopen a previous decision is not a 'final' decision subject to judicial review." *Taylor v. Heckler*, 765 F.2d 872, 877 (9th Cir. 1985) (citing *Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982)). The ALJ's decision, therefore, is not subject to review in this case and provides no basis for reversal.

### B. The ALJ Did Not Err in Refusing to Subpoena Dr. McLean.

Plaintiff argues that because the ALJ relied on Dr. McLean's opinion, the ALJ should have granted Plaintiff's request to subpoena Dr. McLean for further questioning. Generally, "the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. . . . An ALJ's duty to develop the record *further* is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (emphasis added) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Dr. McLean met with Plaintiff on March 9, 2011. A.R. 823. Dr. McLean's diagnosis of Plaintiff's mental health was straightforward: Plaintiff had a depressed mood

and flat affect; he had no difficulty with impulse control; his insight and judgment were age-appropriate; and he had experienced a major-depressive episode related to pain. A.R. 824-25. This is not a case where the evidence was "ambiguous" and required further development. *See Mayes*, 276 F.3d at 460. For the reasons discussed, the ALJ made her decision on the basis of substantial evidence and a fully developed record. The ALJ was not required to grant Plaintiff's request to subpoena Dr. McLean.

### C. The ALJ Partially Erred in Evaluating Third Party Testimony.

#### 1. Nurse Practitioner Elaine New Moon.

Plaintiff argues that the ALJ improperly weighed the medical opinion of Mental Health Nurse Practitioner Elaine New Moon. Doc. 13 at 20. As a nurse practitioner, Ms. New Moon's opinion is not entitled to the same deference as other doctors, unless she worked closely with and under the supervision of a doctor. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1513. The record does not show that Ms. New Moon worked closely with a doctor. Thus, the ALJ had only to provide "germane" reasons for discrediting her opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Ms. New Moon treated Plaintiff's psychological problems from February to August of 2011. *See* A.R. 276-77, 886-912. In her initial evaluation, she noted that Plaintiff's mood was depressed, his affect tearful, and his thought content depressive. A.R. 906-12. In later evaluations, she noted that Plaintiff was doing well with medications and was generally functioning at a normal level. A.R. 886-905. Finally, in her assessment of Plaintiff's ability to work, Ms. New Moon found that Plaintiff had "moderately severe" problems in the following areas: relating to other people, socializing, maintaining personal habits, responding appropriately to co-workers, responding to customary work pressures, and performing complex or varied tasks. A.R. 276-77.

The ALJ found that Ms. New Moon's work ability assessment "is not consistent with the evidence of record, including her own treatment notes[.]" A.R. 19. In coming to

this conclusion, the ALJ relied on the opinions of three doctors. A.R. 18-19. Dr. McLean personally examined Plaintiff, noting that he struggled with depression, but concluding that his psychological problems did not limit his ability to work. A.R. 825. Doctors Garland and Marks also concluded that Plaintiff did not have a severe mental impairment. A.R. 103, 123. By citing the opinions of other doctors and noting the inconsistencies in Ms. New Moon's notes, the ALJ gave germane reasons for discrediting Ms. New Moon's statements.[1]

### 2. Ms. Emma Ruiz.

Emma Ruiz, Plaintiff's stepdaughter, filed a statement in which she echoed Plaintiff's statements about the extent of his disability. A.R. 296-303. The ALJ found Ms. Ruiz's statement to be unpersuasive for the same reasons that she found Plaintiff's testimony to be unpersuasive. A.R. 24. Plaintiff argues that the ALJ did not sufficiently justify her rejection of Ms. Ruiz's statement. Doc. 13 at 19-20.

When an ALJ wishes to discount the testimony of a lay witness, she must give reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. But if "the ALJ provided clear and convincing reasons for rejecting [Plaintiff's] own subjective complaints, and [the other witness'] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Thus, to the extent ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms, the ALJ gave sufficient reasons for rejecting Ms. Ruiz's statement. But insofar as the ALJ erred in rejecting Plaintiff's testimony about his fatigue – as discussed below – the ALJ also erred in rejecting Ms. Ruiz's statements that corroborated this testimony.

---

[1] Plaintiff argues that the ALJ did not follow Social Security Ruling 06-03p when she assessed Ms. New Moon's statements. Doc. 13 at 21-22. This Ruling, however, simply requires ALJs to consider evidence from other medical sources – such as nurse practitioners – and whether that evidence supports a doctor's opinion. The ALJ did this when she compared Ms. New Moon's conclusions with those of Doctors McLean, Garland, and Marks.

- 6 -

**D.     The ALJ Partially Erred in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent he claims that he is unable to perform in a work environment.

At the hearing (A.R. 51-91), Plaintiff testified that he suffers pain in his legs, knees, wrists, elbows, back, and other parts of his body. He stated that he is able to stand for fifteen minutes and can remain seated comfortably for about one hour. He testified that he experiences numbness in his legs and has fallen down several times because of this. He also testified that his knee swells and causes him pain and that he has to sit for three to four hours a day with his leg elevated. He stated that Dr. Hatfield prescribed him a cane for his knee problems and that he uses the cane every day. He stated that he is normally able to lift twenty-five pounds, but at times he struggles to lift a gallon of milk. He has difficulty climbing stairs, bending, opening small objects, and gripping.

Plaintiff stated that he sleeps poorly due to sleep apnea and that he takes two or three naps a day that last from fifteen minutes to an hour. He explained that he uses the bathroom frequently and that this also keeps him up at night. He stated that he suffers regularly from headaches that last from fifteen to twenty minutes. He stated that he takes various medications to alleviate his physical pain and that the medications often force

him to lie down for thirty to sixty minutes.  Plaintiff also explained that he suffers from anxiety and depression.  He suffers crying spells and has experienced suicidal thoughts.  He stated that he is generally able to take care of himself, although he needs help when he falls or faints.  He spends his days reading, watching television, and sleeping.  Finally, he explained that he frequently faints and that he has passed out while driving his car.

In assessing Plaintiff's credibility, the ALJ examined the medical record and Plaintiff's history of treatment.  The ALJ found Plaintiff's testimony not fully credible for two interrelated reasons: (1) the objective evidence did not support his claims regarding the severity of his symptoms and limitations, and (2) Plaintiff did not receive regular treatment for his disabilities.

For Plaintiff's knee and back pain, the ALJ found that Plaintiff's testimony regarding his ability to lift, sit, stand, and walk was not credible.  The ALJ cited the following evidence: medical examinations in November of 2010 and July of 2011 showed that Plaintiff's back had "normal alignment and mobility, no deformity" (A.R. 686, 841); since Plaintiff's knee surgery, no examining doctor has found that Plaintiff walks with a limp and two doctors found his gait to be normal (A.R. 841, 1030, 1060); two state agency reviewing doctors had concluded that Plaintiff's back and knee problems did not significantly impair his ability to work (A.R. 105-09, 126-30); Plaintiff has not sought treatment for his back since 2010 and for his knee since 2011; and no doctor has noted Plaintiff's use of a cane since August of 2011.  Taken together, the ALJ found that "[w]hile the claimant does have some back and knee pain, the objective evidence . . . and his lack of recent treatment suggest that this pain is neither as severe nor as limiting as he claims."  A.R. 23.  For Plaintiff's symptoms of fatigue, the ALJ found that Plaintiff did not usually complain of fatigue to his doctors.  The only mention of Plaintiff's fatigue was during a visit Dr. McLean.  A.R. 823.  She noted that Plaintiff appeared "slightly sleepy."  A.R. 824.

Plaintiff argues that the ALJ's credibility finding was erroneous for five reasons.  First, Plaintiff argues that the ALJ made a "generalized credibility finding" when she did

1  not identify a specific reported symptom and the evidence that conflicts with it. Doc. 13
2  at 14. The Court disagrees. The ALJ specifically discussed Plaintiff's reported
3  symptoms of back pain, knee pain, and fatigue. *See* A.R. 23. As noted above, the ALJ
4  pointed to evidence in the record that conflicts with Plaintiff's reported symptoms.

5  Second, Plaintiff argues that the ALJ did not cite reliable evidence when she found
6  that Plaintiff has a normal gait. Doc. 13 at 15. The Court disagrees. The ALJ cited three
7  separate examinations in which a doctor or a nurse practitioner reported that Plaintiff's
8  gait was normal. A.R. 841, 1030, 1060. In one examination, the doctor reported: "Gait is
9  steady. I did walk him and he walked without any problems." A.R. 1031. Although, as
10 Plaintiff emphasizes, the doctor and nurse practitioner were not orthopedists, the Court
11 finds that the ALJ did not err in relying on their personal observations of Plaintiff.

12 Third, Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony
13 about his use of a cane. Doc. 13 at 18. The Court disagrees. The ALJ found that no
14 doctor had noted Plaintiff's use of a cane since August of 2011. A.R. 887. This lack of
15 reported use of a cane is particularly notable when doctors and nurse practitioners
16 assessed Plaintiff's gait and ability to walk. *See* A.R. 841, 1030, 1060.

17 Fourth, Plaintiff argues that the ALJ failed to consider the extent of Plaintiff's
18 knee pain, his need for additional surgery, and the recommendation of a special knee
19 brace. Doc. 13 at 17. The Court disagrees. The ALJ cited evidence that mentions
20 Plaintiff's need for additional surgery and the possible use of a knee brace. *See* A.R. 22
21 (citing A.R. 931). The ALJ also cited reports that Plaintiff's knee pain had decreased
22 (A.R. 929) and noted that Plaintiff had not returned to an orthopedist since November of
23 2011. A.R. 22. The ALJ was entitled to consider an "unexplained, or inadequately
24 explained, failure to seek treatment" as a basis for its adverse credibility finding. *Orn*,
25 495 F.3d at 636 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).[2]

---

27 [2] Plaintiff argues that he did not seek further treatment because he could not afford
28 it. The Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). There are medical records that show problems with Plaintiff's insurance coverage. In May of 2011,

Furthermore, the medical records that Plaintiff cites are not inconsistent with the ALJ's findings.  On May 11, 2011, James Kalmbach, Physician's Assistant, found that "the patient is not able to work as his work is in the trades of construction and because of the instability in his left knee and his chronic pain[.]"  A.R. 850, 874-75.  On September 22, 2011, Dr. Salvatore La Cognata, D.O., found that Plaintiff "is unable to perform normal work or activities of daily living without the brace and the brace is restrictive and prevents him from getting any further along."  A.R. 931.  On November 2, 2011, however, Mr. Kalmbach noted that "[h]is knee, he feels, has calmed down since the fall" and did not note any work limitations.  A.R. 929.

These records are consistent with the ALJ's finding that by "November 2011 [Plaintiff's] knee pain had improved somewhat.  He has not returned to the orthopedist since that time and in April 2012 an examining doctor noted that . . . 'he walked without any problems.'"  A.R. 22 (citing A.R. 1031).  Mr. Kalmbach's conclusion that Plaintiff was not able to continue work in the construction trade is also consistent with the ALJ's finding that Plaintiff's residual functional capacity limits him to light work.

Fifth, Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony about his fatigue.  At the hearing, Plaintiff testified that he sleeps poorly at night and has to take two or three naps during the day that last from fifteen minutes to an hour.  A.R. 64, 66, 73.  The ALJ found that Plaintiff's fatigue was "not as problematic as he has indicated" because he did not report his fatigue to doctors and only one doctor noted symptoms of fatigue.  A.R. 23.  The Court finds that the ALJ did not give clear and convincing reasons for rejecting Plaintiff's testimony about his fatigue.  Contrary to the ALJ's findings, a doctor and two nurse practitioners noted Plaintiff's symptoms of fatigue.  A.R. 277, 333, 824.  Emma Ruiz, Plaintiff's stepdaughter, corroborated Plaintiff's testimony when she

---

Plaintiff's insurance denied coverage of an MRI of Plaintiff's lumbar spine.  A.R. 834.  In that same month, an assistant noted that Plaintiff's insurance benefits for physical therapy were exhausted for that year.  A.R. 850.  The record does not show, however, that Plaintiff was financially unable to seek any treatment.  In August of 2011, shortly after an assistant noted Plaintiff's insurance problems, Plaintiff visited the same assistant for a check-up on his knee.  A.R. 874.  Further, Plaintiff did not testify that he failed to seek further treatment because he could not afford it.

stated that Plaintiff's sleep is disrupted by pain and that he goes back to bed during the day. A.R. 297. Additionally, Plaintiff has had documented episodes of fainting, one that occurred while he was driving a car. A.R. 1030-32. The ALJ failed to address all of this evidence and failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

In summary, the Court finds that although the ALJ gave specific, clear, and convincing reasons for rejecting most of Plaintiff's testimony about the severity of his symptoms, the ALJ failed to give sufficient reasons for rejecting Plaintiff's testimony about his fatigue.

**V.     Remand.**

When an ALJ improperly rejects a claimant's excess pain testimony, the Court must credit that testimony as true. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Under the credit-as-true rule, an action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Although Plaintiff's case satisfies the first two conditions for an immediate award of benefits, it does not satisfy the third. At the hearing, the ALJ asked the vocational

expert whether jobs exist for a person who may be absent from work for three or more days a month and who requires "unscheduled breaks of indeterminate periods in order to deal with his impairments and symptoms." A.R. 86-87. The vocational expert stated that "the need for unscheduled breaks *and* also missing three days or more per month of work . . . would not be acceptable for any employer." A.R. 87 (emphasis added). Plaintiff's symptoms of fatigue, if credited as true, would require him to take "unscheduled breaks of indeterminate periods" (A.R. 64, 66, 73), but Plaintiff did not testify that he would need to be absent from work for three or more days a month. Thus, his symptoms do not fit the hypothetical the vocational expert considered and the Court cannot determine that the ALJ would be required to find Plaintiff disabled.

The Ninth Circuit has found that "[i]n cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1281 (9th Cir. 1987)); *see also Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 18th day of December, 2014.

David G. Campbell
United States District Judge